**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JIMMY W. MAGEE** | **CIVIL ACTION** |
| **VERSUS** | **NO.  09-0167** |
| **SHERIFF ROBERT CROWE,** | **SECTION: "I"(4)** |
| **WARDEN D. TOPPS** | |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2).  On July 13, 2009, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2]  Upon review of the entire record, the Court has determined this matter can be disposed of without an evidentiary hearing.

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 22.  The plaintiff was sworn prior to testifying.  The hearing was digitally recorded.

# I.   Factual Summary

## A.   The Original Complaint

The plaintiff, Jimmy W. Magee ("Magee"), was a prisoner housed in the Washington Parish Jail ("WPJ") at the time of the filing of this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983.[3]  Magee filed this suit against the defendants, Sheriff Robert Crowe and Warden Demille Topps, challenging the conditions of his confinement at the WPJ.

Magee alleges that the defendants authorized "corporal punishment," specifically Warden Topps would punish several inmates for the wrongful actions of one inmate.  He claims that Sheriff Crowe allowed this behavior.  As examples of this "corporal punishment," he alleges that, on December 16, 2008, Warden Topps authorized deputies to lock the inmates in dormitory B in their cells because one inmate tried to steal an extra dinner tray.  He further claims that, on January 7, 2008, the Warden took jail store privileges away from the entire jail because two inmates were smoking cigarettes and flushed plastic forks down the toilets.

Magee further alleges that the defendants allow the jail to be overcrowded.  He claims that he arrived at the jail on November 13, 2008, and in spite of his back problems, he had to sleep on the floor without a mat for three weeks because of overcrowding.  He claims that the jail was designed to hold 110 inmates and the Sheriff allows 175 inmates to remain in the jail.

Magee also complains that the books in the law library at WPJ were outdated, and specifically complains that some case books are 30 years old.  He alleges that the library has no federal law books.  He also complains that the jail does not have inmate counsel to assist to help inmates who cannot read or write.

---

[3]He has since notified the Court that he is currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center.  Rec. Doc. No. 26.

Magee also alleges that inmates are not allowed adequate access to the law library. He claims that it can take up to three weeks to get library time for just a few minutes. He complains that there is no written procedure for gaining access to the library, which causes delays in obtaining access. He contends that the deputies do not understand that the inmates have a right to use the library, and the jail administration refuses to provide copies of motions and briefs. He also claims that the library needs to be improved and updated to meet constitutional standards.

Magee also complains that the conditions of the facility render his punishment cruel and unusual. He claims that the dormitories have black mold on the walls with worms coming from the base of the toilets. He claims that these worms got on his feet on December 1, 2008.

He also claims that the air flow is inadequate. This, he claims, causes the walls and floors to sweat. He further states that "the hitch" in the day-room stays filled with water which causes an overflow of water near the showers.

Next, Magee complains that Warden Topps and his deputies place inmates in isolation without disciplinary hearings to contest the allegations against them. He claims that the warden will take away certain privileges, like visitation, canteen, telephone use and television, without giving the inmate a disciplinary hearing.

Magee asserts that, after arriving at the jail on November 13, 2008, the inmates were only allowed two outdoor recreation periods over a three month period. He claims that the jail does not have a "yard deputy" to assure that the inmates receive outdoor recreation at least once a week.

He next complains that he arrived at the jail with severe back problems and stomach ulcers. He claims that he requested that the jail provide him with medication on several occasions. He alleges that the jail has done nothing to provide medication or to allow him to see a doctor. He

claims that the jail does not provide medication transportation or have a nurse for inmates who become ill over the weekend. He also claims that medical attention at the jail is only available during the work week.

Finally, Magee alleges that Warden Topps does not allow inmates to subscribe to the Times-Picayune Newspaper. He claims that the warden refused his request to obtain the newspaper at his own expense. He further alleges that the jail does not provide newspapers or magazines, which he claims violates his First Amendment rights.

Magee seeks as relief unspecified punitive and compensatory damages for his pain and suffering and to have Sheriff Crowe pay the filing fee. He also seeks injunctive relief in the form of an order to the Sheriff to correct the conditions of the prison and to have a federal inspector sent to the prison every year to assure compliance.

### B.     The Amended Complaint

Magee amended his complaint to indicate that he is seeking injunctive relief and punitive and compensatory damages in the amount of $175,000.[4] He also indicates that each individual is named in his official and individual capacities.

### C.     The *Spears* Hearing

Magee testified that he is presently housed in the Elayn Hunt Correctional Center serving time on a probation revocation and a misdemeanor charge. He stated that he had been housed in the WPJ from November 2008 to January 2009. He filed this suit because the WPJ had water on the floor near toilet and black mold on the walls. He also complained that inmates had to wait for medical treatment. He also stated that the law library was outdated and that inmates were not

---

[4]Rec. Doc. No. 20.

allowed enough time to access the books that were there. The jail also did not have anyone there to help with legal matters. Magee also stated that the outdoor recreation time was inconsistently provided when it was provided at all.

He further testified that the jail did not have grievance forms available, so he complained to the deputies about the conditions. He stated that he was told that he should not have gone to jail.

Magee further stated that he entered the jail with a bad back and was not able to get pain medication or follow certain routines to help his condition. He stated that he submitted request forms but did not receive care, except one night he did receive a cold tablet. He also complained that, upon his arrival at the WPJ, he had to sleep on the floor without a mat or bunk. He managed to get a sheet from someone that he used until he was given a mat when another inmate was released. This went on for about one week.

He also complained that the jail did not provide a disciplinary board to review punishment imposed on the inmates. He also stated that the Warden and his deputies would punish the whole dormitory for the actions of one inmate. This would include the loss of commissary and phone privileges and time in a holding cell. He further stated that Deputy Brumfield would threaten to beat people, and threw someone up against a wall at one time. When the inmates complained, he handed out a couple of ARP forms for them to fill out. Magee also stated that Deputy Brumfield stuck his fingers in his face, stared at his face, and threatened him with vile language.

Magee further testified that he sued Sheriff Crowe because he is the boss over the jail. He allows the Warden and the Assistant Warden to run the jail as they see fit, without correcting their actions. He conceded that the Sheriff had no direct involvement with him while he was at the jail.

He also testified that he sued the Warden because of the conditions of jail and for his pain and suffering. As relief, he seeks $175,000 in damages and injunctive relief in the form of an order directing the prison to improve the jail and obey the rules and guidelines of the Supreme Court.

## II.    Standard of Review for Frivolousness

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.    Analysis

#### A.    Request for Injunctive Relief is Moot

As part of his compensation, Magee seeks injunctive relief in the form of an order for the repair of the prison and for the prison officials to comply with Supreme Court law.

Magee is no longer housed in WPJ. He was transferred to Hunt and expected his release from jail. It is well settled that a claim for injunctive relief related to the standards of an inmate's prison life is rendered moot upon the prisoner's transfer or release from the facility and where there is little likelihood that he will return to that facility. *Smith v. City of Tupelo, Miss.*, 281 F. App'x 279, 282 (5th Cir. June 2, 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)). Accordingly, Magee's request for injunctive relief is now moot and can be dismissed as frivolous.

#### B.    Claims Against Sheriff Crowe and Warden Topps in their Official Capacities

Magee amended his suit to clarify that he has sued the defendants in their individual and official capacities. Suit against the Sheriff and the Warden in their official capacities is suit against the entity they represent; in this case, that is Washington Parish. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The Sheriff and Warden, as representatives of the Parish, could be liable under § 1983 only if their actions were in execution of an unconstitutional parish policy or custom which inflicted injury or damage upon the plaintiff. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Magee would have to allege not merely that such an unconstitutional policy or custom exists, but that it was the proximate cause of his injury or damage. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982), *overruled on other grounds, Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986). Magee,

however, has not asserted that the conditions of his confinement or the actions by the defendants were the result of an unconstitutional policy or custom of Washington Parish as contemplated by *Monell*. Instead, his claims concern allegations of isolated actions and decisions in connection with the conditions of the jail. The claims against Sheriff Crowe and Warden Topps each in their official capacity are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e. The remaining claims will be addressed against the defendants in their individual capacities.

**C.** **Claims Against Sheriff Crowe**

Magee named Sheriff Crowe as a defendant because of his position as sheriff and supervisor over the WPJ employees. His claims are devoid of any allegation that the Sheriff was directly and personally involved in the events and conditions of which he complains at the jail, and which he claims occurred under the authority of Warden Topps, as the administrator over the jail. Magee conceded that he named the Sheriff only because "he was the boss."

The Sheriff may only be liable under § 1983 if he was personally involved in the acts causing the deprivation of the plaintiff's constitutional rights or a causal connection existed between an act by the Sheriff and the alleged constitutional violation. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980). A supervisory official, like the Sheriff, can not be held liable under § 1983 under a theory of *respondeat superior* simply because personnel at the prison allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979).

Magee does not allege that Sheriff Crowe was present for, or personally involved in, the alleged concerns he has about the jail. Magee also has not alleged that he has suffered any injury as a result of any directive, supervised training or activity, or other policy set forth by the Sheriff which would create vicarious liability. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). Instead, Magee simply names Sheriff Crowe because he is the sheriff. Thus, the Court finds that Magee's claims against Sheriff Crowe, in his individual capacity, are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### D.      Conditions of Confinement Claims Against Warden Topps

Magee lists a myriad of claims against Warden Topps arising from his administration of the prison and the conditions of the jail itself. He alleges that he made oral complaints to the Warden and other prison officials to no avail. He also stated that he did not file administrative grievance, because the jail did not have a grievance procedure. Contrary to this, he later testified at the *Spears* Hearing that Deputy Brumfield passed out ARP forms to the inmates after an incident in the dormitory. Nevertheless, all of Magee's claims are also frivolous for the following reasons.

"Prison conditions constitute cruel and unusual punishment if they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment.'" *Hamilton v. Lyons*, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Hutto v. Finney*, 437 U.S. 678, 687 (1978)). Like other Eighth Amendment claims, a conditions of confinement claim must satisfy tests for both objective and subjective components. *Davis v. Scott*,

157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *accord Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *Downey v. Denton County*, 119 F.3d 381, 385-86 (5th Cir. 1997). To succeed on a claim of unconstitutional conditions of confinement, this Court "must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303). If the Court finds that either the subjective or objective component of the test is not met, it need not address the other component. *Davis*, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in *Wilson* noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes. Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9.

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard. *Wilson*, 501 U.S. at 303. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

*Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under

exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be

inferred by the obviousness of a substantial risk." *Id*. (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a
> <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a
> known or obvious consequence of his action. . . . The "deliberate indifference"
> standard permits courts to separate omissions that "amount to an intentional choice"
> from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County*

*Comm'rs v. Brown*, 520 U.S. 397 (1997)) ( citations omitted) (emphasis added).

## 1.      <u>Unsanitary Living Conditions</u>

Magee complains that the living conditions of the facility were substandard, because his

dormitory had black mold on the walls, worms coming from the wet base of the toilet, and

inadequate ventilation. The conditions described by the plaintiff, while plainly not comfortable or

pleasant, do not rise to a level of seriousness constituting a constitutional violation.

Magee alleges no serious harm or risk of serious harm in the constitutional sense, and the

court can perceive none under the circumstances described in the plaintiff's claims. Short term

sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.

*Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994); *Knop v. Johnson*, 977 F.2d 996,

1013 (6th Cir. 1992); *Robinson v. Ill. State Corr. Ctr.*, 890 F. Supp. 715, 720 (N.D. Ill. 1995).

"[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v.*

*Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765,

771 (5th Cir.1986)); *accord Benshoof v. Layton*, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir.

Oct. 27, 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004).

None of Magee's allegations about the conditions at WPJ establish constitutional violations. *See Davis*, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Causey v. Allison*, No. 08CV155-RHW, 2008 WL 4191746, at *1 (S .D. Miss. Sept. 9, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *McIntyre v. Phillips*, No. 07-527, 2007 WL 2986470, at *2-4 (W.D. Mich. Sept. 10, 2007); *Eady v. Head*, No. CIVASA04CA0648 NN, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) ("Going without a shower and being exposed to the foul smell of a backed-up shower for two days on two separate occasions does not show deliberate indifference to Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of the Eighth Amendment.").

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir.1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). Magee does not allege that he has suffered any injury, other than inconvenience, as a result of the conditions of his dormitory at the WPJ.

For the foregoing reasons, Magee's complaint about the conditions of his confinement falls short of stating a constitutional violation, and this claim must also be dismissed as frivolous pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

## 2.    Denial of a Mat or Bunk

Magee also alleges that he was without a mat or bunk to sleep on for about one week after he arrived at the overcrowded WPJ. Magee has not alleged a substantial risk of serious harm in the constitutional sense from the temporary lack of a bed or mattress.

The federal courts have repeatedly held that the deprivation of bedding for a limited period of time is not per se unconstitutional. *See Grissom v. Davis*, No. 02-1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not a deprivation of basic human needs and did not cause plaintiff to suffer serious harm); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping without mattress or blanket for four days on a concrete slab in cell located ten feet from exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional). The provision of bedding is within those matters committed to prison administrators' sound discretion. *Kot v. Matty*, No. 90-7644, 1991 WL 246906, at *2 (E.D. Pa. Nov. 15, 1991), *aff'd*, 980 F.2d 723 (3d Cir. 1992).

Magee alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions, from being deprived of a mattress for less than a week's time, despite his minor discomfort. *Carter v. Strain*, No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009) (citing

*McAllister v. Strain*, No. 08-5174, 2009 WL 500560, at *2-3 (E.D. La. Feb. 25, 2009); *Desroche v. Strain*, 507 F. Supp. 2d 571, 580-81 (E.D. La. 2007) (Feldman, J.)).

Magee's claim is frivolous and fails to state a claim upon which relief can be granted under § 1983. It must be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

### 3.   Improper Disciplinary Actions and Loss of Privileges

Magee alleges that the Warden and his deputies engaged in "corporal punishment," however, nothing he presents to this Court has a "corporal" component. Instead, his complaint is that the inmates were unjustly disciplined as a group for the conduct of another inmate. This included being placed in "lockdown" for a few days and loss of canteen and telephone privileges without a disciplinary hearing.

In *Sandin v. Connor*, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other denial of prison privileges begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources-the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In *Sandin*, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (citations omitted). Thus, in *Sandin*, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Hewitt*, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson v. Austin*, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit, in *Madison*, held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." *Madison*, 104 F.3d at 768; *accord Hernandez*, 522 F.3d at 563; *Dixon v. Hastings*, 117 F. App'x 371, 372 (5th Cir. 2005); *Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000). In *Hernandez* and *Madison*, the Fifth Circuit held that such restrictions do not represent the type of atypical, significant deprivation in which a state might create a liberty interest. *Hernandez*, 522 F.3d at 563; *Madison*, 104 F.3d at 768.

Examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital and extension of the prisoner's sentence for his underlying criminal conviction. *Sandin*, 515 U.S. at 484. In addition, the Supreme Court recently held that solitary confinement in a "Supermax" facility imposes an atypical and significant hardship that creates a liberty interest in avoiding such a placement when all of the following factors are taken together: almost all human contact, including cell to cell conversation, is prohibited; the light is on for 24 hours per day; exercise is for one hour per day, but only in a small indoor room; the placement is indefinite and is reviewed just annually; and placement disqualifies an otherwise eligible inmate from parole consideration. *Wilkinson*, 545 U.S. at 223-24. Nothing of this magnitude is alleged here by Magee.

In the instant case, Magee alleges that prison officials provided him with no reason or process in placing the inmates under lockdown for a few days. However, *Sandin* makes clear that no particular process is required, unless something more than a mere change in condition of confinement occurs. *Madison*, 104 F.3d at 768.

On the contrary, Magee's own testimony at the *Spears* Hearing establishes that his punishment was limited to loss of commissary and telephone privileges, without any "atypical, significant deprivation" that might rise to the level of constitutional concerns, such as loss of good time credits. *See Hernandez*, 522 F.3d at 563 (distinguishing the "extreme conditions" described in *Wilkinson* and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); *Dixon*, 117 F. App'x at 372 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); *Payne v. Dretke*, 80 F. App'x 314, 315 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").

Magee has failed to make any showing that the time spent in lockdown or with lost privileges in any way extended his total time in prison or otherwise resulted in atypical, significant hardships. *Sandin*, 515 U.S. at 484; *Hernandez*, 522 F.3d at 563; *Madison*, 104 F.3d at 768.

For the foregoing reasons, Magee's complaint about the conditions of his confinement falls short of stating a constitutional violation, and this claim must also be dismissed as frivolous pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

### 4.     Inadequate Access to Law Library

Magee contends that the minimal law library at the WPJ was inadequate and outdated and that the prison had no legal assistant to help the inmates use it. Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Dickinson v. TX, Fort Bend County*, 325 F. App'x 389, 390 (5th Cir. 2009); *Sandoval v. Johns*, 264 F.3d 1142, No. 00-41276, 2001 WL 822779, at *1 (5th Cir. June 29, 2001) (Table, Text in Westlaw); *McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir. 1998); *Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir. 1996). However, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Vaccaro v. United States*, 125 F.3d 852, No. 96-60838, 1997 WL 574977, at *1 (5th Cir. Aug. 28, 1997) (quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993)) (Table, Text in Westlaw); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

To state a claim that his constitutional right of access to the courts was violated, Magee must demonstrate that his position as a litigant was actually prejudiced. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Cochran v. Baldwin*, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); *Smith v. Polunsky*, 233 F.3d 575, No. 00-40362, 2000 WL 1468717, at *1 (5th Cir. Sep. 5, 2000) (Table, Text in Westlaw); *Eason*, 73 F .3d at 1328. The inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.

Magee does not allege the essential elements of a First Amendment claim detailed above, either in his complaint or his testimony. He does not allege that he was hindered in any particular civil or criminal proceedings because of the library situation at WPJ. He has not demonstrated any

actual legal prejudice of the type required by *Lewis* that was caused by any action or omission of the defendants. "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." *Hart v. O'Brien*, 127 F.3d 424, 446 (5th Cir.1997), *abrogated in part on other grounds as recognized in Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999); *accord Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000). In *Lewis*, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts. Magee has made no such allegation here.

For all of the forgoing reasons, Magee's claim concerning inadequate access to a law library at the jail is legally frivolous and fails to state a § 1983 claim upon which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

## 5. <u>Inadequate Medical Care</u>

Magee also alleges that he sought medical attention for his history of back problems and stomach ulcers and was not provided care. Magee's claims are frivolous for the following reasons.

The standard of conduct imposed on defendants with respect to medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104. This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.*; *Hare v. City of Corinth*, 74 F.3d 633, 636 (5th Cir. 1996).

Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983" (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In this case, Magee must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. He fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard. He testified at the *Spears* Hearing that he was able to get some care at the jail, and that the prison would provide medical care although with some delay. Delayed medical care is not sufficient to establish a constitutional violation. Magee's conclusory claims of medical indifference are frivolous and should be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

### 6.    Inadequate Outdoor Recreation

Magee also alleged that the inmates were not provided with adequate and consistent opportunities for outdoor recreations. This complaint also is frivolous and fails to state a claim.

Inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation." *Lewis v. Smith*, 277 F.3d 1373, No. 00-31371, 2001 WL 1485821, at *1 (5th Cir. Nov. 13, 2001) (Table, Text in Westlaw) (citing *Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir. 1982); *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir.1977)); *accord Sampson v. Corr. Corp.*, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (citing *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991); *Beck v. Lynaugh*, 842

F.2d 757, 762 (5th Cir. 1988); *Lato v. Attorney Gen.*, 773 F. Supp. 973, 978 (W.D. Tex. 1991)).

"[W]hat is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." *Lewis*, 2001 WL 1485821, at *1 (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), *amended in part*, *vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982)). Thus, to succeed on a claim under § 1983 for lack of exercise, a prisoner must set forth facts sufficient to "support the existence of any health hazard under the specific circumstances involved." *Ruiz*, 679 F .2d at 1152; *accord Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001); *Ordaz v. Lynaugh*, 20 F.3d 1171, No. 93-4290, 1994 WL 144882, at *4 (5th Cir. Apr. 15, 1994) (Table, Text in Westlaw); *Green*, 801 F.2d at 771.

Also, to state a claim under § 1983, the plaintiff must also allege an actual injury caused by defendants' acts. *See Brock v. Sparkman*, 101 F. App'x 430, 431 (5th Cir. 2004) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)) (prisoner who had bumps and bruises from repeatedly hitting his head on bunk bed had no cognizable injury); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no injury); *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (claims properly dismissed when plaintiff alleged insufficient causal connection between defendants' conduct and the claimed assault, and when plaintiff did not allege constitutional harm); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 602 (5th Cir. 1988) (citing *Stachura*, 477 U.S. at 307) (§ 1983 is designed to compensate persons for actual injuries caused by deprivation of constitutional rights); *Jefferson v. City of Hazelhurst*, 936 F. Supp. 382, 386 (S.D. Miss. 1995) (To state a claim under § 1983, plaintiff must plead "a direct causal connection . . . without intervening factors, between the deprivation and some injury to plaintiff.").

Magee fails to establish any constitutional violation arising from his exercise opportunities at WPJ. He identified no particular injuries suffered as a result of lack of outdoor recreation. He conceded that he was permitted some limited outdoor recreation while there for less than three months. Magee cannot show either that he was totally deprived of outdoor recreation for any significant time period or that he suffered any physical injury or violation of his constitutional rights of any kind as a result of the alleged limitations on outdoor exercise. *See Hernandez*, 522 F.3d at 560 (Inmate who alleged that he was deprived of outdoor and out-of-cell exercise for thirteen months while in lockdown and that he suffered muscle atrophy, stiffness, loss of range of motion, and depression failed to show either that he was placed at substantial risk of serious harm or that he suffered a serious illness or injury sufficient to constitute an Eighth Amendment violation.); *Ordaz*, 1994 WL 144882, at *4 (Plaintiff failed to state a constitutional violation resulting from denial of recreation when he failed to allege health impairment or physical injury.)

Thus, Magee fails to state a cognizable § 1983 claim. This claim must also be dismissed as frivolous pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

### 7.    Verbal Threats by Deputy Brumfield

Magee also complains that a deputy at the prison, Deputy Brumfield, shook his finger in his face, stared at him, and cursed at him. These claims are clearly frivolous to the extent they are asserted against Warden Topps. As discussed previously, a supervisory official can not be held liable under § 1983 under a theory of *respondeat superior* simply because personnel at the prison allegedly violated the plaintiff's constitutional rights. *Alton*, 168 F.3d at 200; *Baskin*, 602 F.2d at 1220. The underlying claim itself is no less frivolous even if urged against a proper defendant.

The Fifth Circuit has long held that "'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" *Robertson v. Plano City*, 70 F.3d

21, 24 (5th Cir. 1995) (quoting *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)); *accord Burnette v. Phelps*, 621 F. Supp. 1157, 1162 (M.D. La. 1985); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973), *abrogated in part on other grounds by Graham v. Connor*, 490 U.S. 386, 397 (1989) (the use of language, no matter how violent, does not constitute a § 1983 violation); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation actionable under § 1983); *Baird v. Perez*, No. 98-3762, 1999 WL 386746, at *2 n.3 (S.D.N.Y. June 10, 1999) ("verbal harassment, abuse and even vile language by arresting officers 'do not constitute a violation of any federally protected right'") (quoting *Bowles v. State*, 37 F. Supp. 2d 608, 613 (S.D.N.Y. 1999)).

In addition, "[c]laims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment." *Jackson v. Liberty County*, 860 F. Supp. 360, 363 (E.D. Tex. 1994). The use of a racial epithet in a single isolated context does not give rise to a cause of action for violation of constitutional rights. *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999), *reh'g denied & opin. clarified*, 186 F.3d 633 (5th Cir. 1999). "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." *Slagel v. Shell Oil Reference.*, 811 F. Supp. 378, 382 (C.D. Ill. 1993), *aff'd*, 23 F.3d 410 (7th Cir. 1994) (citations omitted). Thus, Magee's alleged exposure to derogatory remarks or vulgar comments do not rise to the level of a constitutional violation, and this claim must be dismissed as frivolous.

### 8.    Denial of Access to Newspaper

Magee also claims that the jail does not provide magazines or newspapers and that Warden Topps denied his request for permission to purchase the local newspaper directly from the publisher.

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1972). Among other things, the "Constitution protects the rights to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).

Prison policies impinging on inmates' First Amendment rights are valid only if they are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999). "[E]ven though this court engages in a deferential review of the administrative decisions of prison authorities, the traditional deference does not mean that courts have abdicated their duty to protect those constitutional rights that a prisoner retains." *Fortner v. Thomas*, 983 F.2d 1024, 1029 (11th Cir. 1993).

In determining whether a regulation or restriction is reasonable, the court employs a balancing test considering: (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether obvious, easy alternatives exist. *Beard v. Banks*, 548 U.S. 521, 528 (2006) (reiterating the holdings in *Turner* and *Overton v. Bazzetta*, 539 U.S. 126 (2003), in upholding a prison policy denying newspapers, magazines and photographs to a group of "specifically dangerous and recalcitrant inmates.")

Based on the foregoing, the federal courts have held that "[t]here is no basis for total restrictions on prisoners' access to the news in view of their clear First Amendment rights." *United States ex rel. Manicone v. Corso*, 365 F. Supp. 576, 577 (E.D.N.Y. 1973); *see also Kincaid v. Rusk,*

670 F.2d 737, 744 (7th Cir. 1982) ("[T]he total ban on newspapers was arbitrary and unjustifiable when the two hazards allegedly caused by the possession of newspapers-fire damage and jammed plumbing-could as well be caused by the sort of reading material detainees were permitted to have."); *Payne v. Whitmore*, 325 F. Supp. 1191, 1193 (N.D. Cal. 1971) ("Jail cells are already filled with an abundance of materials quite suitable for fire starting . . . yet no one suggests that cells ought to be stripped of bedding, clothing, toilet paper, writing materials, and so on.")

Furthermore, a number of federal courts have held that prisoners have a right to receive and read newspapers. *See*, *e.g*, *Sizemore v. Williford,* 829 F.2d 608, 610 (7th Cir. 1987) (absent restrictions based on legitimate goals of confinement, prison inmates retain First Amendment right to receive and read newspapers); *Mann v. Smith*, 796 F.2d 79, 82-83 (5th Cir. 1986) (county jail's policy of banning newspapers and magazines violated a pretrial detainee's First Amendment rights where the state failed to show the ban served a legitimate government objective); *Wilkinson v. Skinner*, 462 F.2d 670, 673 n.5 (2d Cir. 1972) ("refusal to deliver a newspaper would ordinarily be interference with appellant's first amendment rights"); *Rowland v. Jones*, 452 F.2d 1005 (8th Cir. 1971) (prison authorities' denial of access to newspaper "Muhammad Speaks" constituted prior restraint in violation of First Amendment); *Spellman v. Hopper*, 95 F. Supp. 2d 1267 (M.D. Ala. 1999) (absolute prohibition on subscription magazines and newspapers applied to administrative segregation inmates in Alabama is not reasonably related to legitimate penological goals).

In a recent decision addressing the First Amendment rights of prisoners, the Fifth Circuit noted that the Supreme Court in *Beard* "acknowledged the particular importance of the first factor, explaining that in some cases the second, third, and fourth factors can 'add little, one way or another, to the first factor's basic logical rationale.'" *Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009) (quoting *Beard*, 548 U.S. at 532). Thus, prison restrictions on an inmate's access to

newspapers and other publications do not violate his First Amendment rights if the restrictions are reasonably related to legitimate penological interests. *Beard*, 548 U.S. at 530; *Thornburgh*, 490 U.S. at 413; *Turner*, 482 U.S. at 89; *Morgan*, 570 F.3d at 666. Therefore, based upon the current body of legal authority, the Court finds that at this stage of the litigation, Magee's claim that the Warden denied him access to newspapers can not be disposed of as frivolous at this time and should be allowed to proceed forward against Warden Topps in his individual and official capacities.

## IV.    <u>Recommendation</u>

It is therefore **RECOMMENDED** that Jimmy W. Magee's § 1983 claims against the defendants, Sheriff Robert Crowe, in both his individual and official capacities, and against Warden Demille Topps, in his official capacity only, be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim for which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997.

It is further **RECOMMENDED** that Magee's § 1983 claims against the defendant, Warden Demille Topps, in his individual capacity, alleging (1) unsanitary living conditions, (2) denial of a mat or bunk, (3) disciplinary actions and loss of privileges, (4) denial of access to the law library, (5) inadequate medical care, (6) inadequate outdoor recreation, and (7) verbal threats by Deputy Brumfield, be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997.

It is further **RECOMMENDED** that Magee's § 1983 claim against Warden Topps, in his individual capacity, alleging denial of access to newspapers be allowed to proceed forward and remain referred to the undersigned for further proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this _____1st_____ day of _____April_____, 2010.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.