UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JIMMY W. MAGEE | CIVIL ACTION |
| VERSUS | NO. 09-0167 |
| SHERIFF ROBERT CROWE, WARDEN D. TOPPS | UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY |

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment (R. Doc. 65)** filed by the Defendant, Warden Demille Tops ("Warden Topps"). Warden Topps seeks summary judgment as to the Plaintiff's remaining claim against him for denial of newspapers and further requests that all costs be assessed against the Plaintiff. The Plaintiff, Jimmy W. Magee ("Magee") did not file an opposition. This matter is before the undersigned United States Magistrate Judge upon consent of the parties pursuant to **Title 28 U.S.C. § 636(c)**.[1]

**I.  Factual Summary**

　　**A.  The Original Complaint**

The plaintiff, Jimmy W. Magee ("Magee"), was a prisoner housed in the Washington Parish Jail ("WPJ") at the time of the filing of this *pro se* and *in forma pauperis* complaint pursuant to 42

---

[1] R. Doc. 48.

U.S.C. § 1983.[2]  Magee filed this suit against the defendants, Sheriff Robert Crowe and Warden Demille Topps, challenging the conditions of his confinement at the WPJ.

Magee alleges that the defendants authorized "corporal punishment," specifically Warden Topps would punish several inmates for the wrongful actions of one inmate.  He claims that Sheriff Crowe allowed this behavior.  As examples of this "corporal punishment," he alleges that, on December 16, 2008, Warden Topps authorized deputies to lock the inmates in dormitory B in their cells because one inmate tried to steal an extra dinner tray.  He further claims that, on January 7, 2008, the Warden took jail store privileges away from the entire jail because two inmates were smoking cigarettes and flushed plastic forks down the toilets.

Magee further alleges that the defendants allow the jail to be overcrowded.  He claims that he arrived at the jail on November 13, 2008, and in spite of his back problems, he had to sleep on the floor without a mat for three weeks because of overcrowding.  He claims that the jail was designed to hold 110 inmates and the Sheriff allows 175 inmates to remain in the jail.

Magee also complains that the books in the law library at WPJ were outdated, and specifically complains that some case books are 30 years old.  He alleges that the library has no federal law books.  He also complains that the jail does not have inmate counsel to assist to help inmates who cannot read or write.

Magee also alleges that inmates are not allowed adequate access to the law library.  He claims that it can take up to three weeks to get library time for just a few minutes.  He complains that there is no written procedure for gaining access to the library, which causes delays in obtaining access.  He contends that the deputies do not understand that the inmates have a right to use the

---

[2] He was later incarcerated in the B.B. "Sixty" Rayburn Correctional Center. Rec. Doc. No. 26. He was later released, and on March 17, 2011, the Court was advised that he had relocated to Angie, Louisiana. Rec. Doc. No. 56.

library, and the jail administration refuses to provide copies of motions and briefs. He also claims that the library needs to be improved and updated to meet constitutional standards.

Magee also complains that the conditions of the facility render his punishment cruel and unusual. He claims that the dormitories have black mold on the walls with worms coming from the base of the toilets. He claims that these worms got on his feet on December 1, 2008.

He also claims that the air flow is inadequate. This, he claims, causes the walls and floors to sweat. He further states that "the hitch" in the day-room stays filled with water which causes an overflow of water near the showers.

Next, Magee complains that Warden Topps and his deputies place inmates in isolation without disciplinary hearings to contest the allegations against them. He claims that the Warden will take away certain privileges, like visitation, canteen, telephone use and television, without giving the inmate a disciplinary hearing.

Magee asserts that, after arriving at the jail on November 13, 2008, the inmates were only allowed two outdoor recreation periods over a three month period. He claims that the jail does not have a "yard deputy" to assure that the inmates receive outdoor recreation at least once a week.

He next complains that he arrived at the jail with severe back problems and stomach ulcers. He claims that he requested that the jail provide him with medication on several occasions. He alleges that the jail has done nothing to provide medication or to allow him to see a doctor. He claims that the jail does not provide medication transportation or have a nurse for inmates who become ill over the weekend. He also claims that medical attention at the jail is only available during the work week.

Finally, Magee alleges that Warden Topps does not allow inmates to subscribe to the Times-Picayune Newspaper. He claims that the Warden refused his request to obtain the newspaper at his own expense. He further alleges that the jail does not provide newspapers or magazines, which he claims violates his First Amendment rights.

Magee seeks as relief unspecified punitive and compensatory damages for his pain and suffering and to have Sheriff Crowe pay the filing fee. He also seeks injunctive relief in the form of an order to the Sheriff to correct the conditions of the prison and to have a federal inspector sent to the prison every year to assure compliance.

### B.     The Amended Complaint

Magee amended his complaint to indicate that he is seeking injunctive relief and punitive and compensatory damages in the amount of $175,000.[3] He also indicates that each individual is named in his official and individual capacities.

### C.     The *Spears* Hearing

Magee testified that he was presently housed in the Elayn Hunt Correctional Center serving time on a probation revocation and a misdemeanor charge. He stated that he had been housed in the WPJ from November 2008 to January 2009. He filed this suit because the WPJ had water on the floor near the toilet and black mold on the walls. He also complained that inmates had to wait for medical treatment. He also stated that the law library was outdated and that inmates were not allowed enough time to access the books that were there. The jail also did not have anyone there to help with legal matters. Magee also stated that the outdoor recreation time was inconsistently provided when it was provided at all.

---

[3] Rec. Doc. No. 20.

4

He further testified that the jail did not have grievance forms available, so he complained to the deputies about the conditions. He stated that he was told that he should not have gone to jail.

Magee further stated that he entered the jail with a bad back and was not able to get pain medication or follow certain routines to help his condition. He stated that he submitted request forms but did not receive care, except one night he did receive a cold tablet. He also complained that, upon his arrival at the WPJ, he had to sleep on the floor without a mat or bunk. He managed to get a sheet from someone that he used until he was given a mat when another inmate was released. This went on for about one week.

He also complained that the jail did not provide a disciplinary board to review punishment imposed on the inmates. He also stated that the Warden and his deputies would punish the whole dormitory for the actions of one inmate. This would include the loss of commissary and phone privileges and time in a holding cell. He further stated that Deputy Brumfield would threaten to beat people, and threw someone up against a wall at one time. When the inmates complained, he handed out a couple of Administrative Remedy Procedure ("ARP") forms for them to fill out. Magee also stated that Deputy Brumfield stuck his fingers in his face, stared at his face, and threatened him with vile language.

Magee further testified that he sued Sheriff Crowe because he is the boss over the jail. He allows the Warden and the Assistant Warden to run the jail as they see fit, without correcting their actions. He conceded that the Sheriff had no direct involvement with him while he was at the jail.

He also testified that he sued the Warden because of the conditions of jail and for his pain and suffering. As relief, he seeks $175,000 in damages and injunctive relief in the form of an order directing the prison to improve the jail and obey the rules and guidelines of the Supreme Court.

**D.     The Remaining Claim**

On April 29, 2010, Magee's claims against Sheriff Robert Crowe, in both his individual and official capacity and Magee's claims against Topps in his official capacity only, were dismissed with prejudice as frivolous and for failure to state a claim for which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997.  In addition, Magee's claims against Topps, in his individual capacity, alleging (1) unsanitary living conditions, (2) denial of a mat or bunk, (3) disciplinary actions and loss of privileges, (4) denial of access to the law library, (5) inadequate medial care, (6) inadequate outdoor recreation, and (7) verbal threats by Deputy Brumfield, were dismissed with prejudice as frivolous and for failure to state a claim for which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997.  Thus, the only claim remaining before the Court is Magee's § 1983 claim against Warden Topps, in his individual capacity, alleging denial of access to newspapers.

**II.    Motion for Summary Judgment**

On March 24, 2011, the parties were scheduled to participate in a pre-trial conference before the undersigned.  On March 24, 2011, Jason Paul Wixom, counsel for the remaining defendant, Warden Topps, appeared before the undersigned.  However, Magee failed to attend despite representations during the March 21, 2011, Settlement Conference that he would attend the Pre-Trial Conference.

The Court reviewed the pre-trial submissions produced by the Defendant, which indicated that he intended to raise failure to exhaust as a defense at trial.  As a result, the Court suspended the trial and ordered the Defendant to file a motion for summary judgment no later than March 28, 2011.

The Court further ordered that any opposition be filed by Magee no later than April 4, 2011.  (*See* R. Doc. 63.)

On March 25, 2011, Warden Topps filed a motion for summary judgment, contending that Magee failed to exhaust his administrative remedies, in violation of the Prison Litigation Reform Act ("PRLA"), prior to filing the above captioned action such that his claim should be summarily dismissed.  Magee did not file an opposition.

### III.    Standard of Review for Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried.  *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party.  *Id.*, at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie."  *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994).  While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts

showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial.'" *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

**IV.   Analysis**

Warden Topps contends that, contrary to the Plaintiff's assertion, the Washington Parish Jail had a grievance procedure at the time the Plaintiff was incarcerated and at the time that the Plaintiff filed his Complaint with the Court. Warden Topps by affidavit states that, on July 1, 2008, both Robert Crowe, the Sheriff of Washington Parish, and himself adopted a grievance procedure for the prison. Magee was incarcerated on November 13, 2008, a few months after the procedure was put in place. Further, Magee's complaint was not filed until January 12, 2009, several months after the procedure was put in place. Warden Topps also contends that inmates are informed of the grievance procedure at the time they are booked.

Warden Topps asserts that, under the grievance procedure, if a Washington Parish inmate has a complaint about the conditions of their confinement, a copy of the grievance form can be obtained from the shift supervisor. Alternatively, the prisoner could obtain a copy of the form from the box of forms which is located on each cell block of the prison. Once the prisoner obtains a form,

he need only list his complaint in the form and provide a copy to the shift supervisor. The shift supervisor must then submit a response to the grievance. If the inmate is unsatisfied with the response, the inmate may file for an appeal to the Warden within three days of receiving the shift supervisor's response. The Warden then must file a response to the grievance. If the inmate is unsatisfied with the Warden's response, the inmate may appeal to the Sheriff.

In support of the motion, Warden Topps submitted an affidavit in which he attests that a grievance procedure was in place when Magee was booked, incarcerated, and filed the complaint. (R. Doc. 65-4, pp. 1-2, Exh. A.) Warden Topps also included a copy of the document which states that the grievance procedure was formally adopted. (R. Doc. 65-4, p. 3, Exh. A(1)). Finally, Warden Topps provided a blank copy of the applicable forms for filing, and appealing responses to grievances. (R. Doc. 65-4, pp. 5-8, Exh. A(2)). Warden Topps contends that because a grievance procedure was in place, and Magee failed to utilize it, summary judgment is appropriate.

The PLRA, as codified at 42 U.S.C. § 1997e(a), requires that prisoners must properly exhaust "such administrative remedies as are available" prior to filing a § 1983 complaint related to prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Specifically, § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003). The State of Louisiana has a similar requirement before suit can be filed in the state courts. La. Rev. Stat. Ann. § 15:1184(A)(2).

Exhaustion under the PLRA is an affirmative defense and is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.

*Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *see also*, *Jones v. Brock*, 549 U.S. 199, 216 (2007) (concluding that exhaustion under the PLRA is an affirmative defense). As a result, the trial court may resolve factual disputes concerning exhaustion without the participation of a jury. *Id*.

The court does not "inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness"; prisoners simply "must exhaust such administrative remedies as are available, whatever they may be." (citations and internal quotation marks omitted) *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). The Supreme Court has held that the exhaustion requirement mandates "proper exhaustion," which means compliance with prison procedural rules and deadlines. *Woodford*, 548 U.S. at 92-93. Furthermore, substantial compliance with administrative procedures is insufficient to permit pursuit of a federal lawsuit. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Unless the prisoner pursues his "grievance remedy to conclusion," he has not exhausted "available remedies." *Id*.

When a prisoner fails to exhaust his administrative remedies prior to filing suit without a valid excuse, a court properly dismisses the action without prejudice to its refiling after the prisoner exhausts his administrative remedies. *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998).

In his Complaint, Magee states that he did not present the facts relating to his Complaint in the prisoner grievance procedure because "Washington Parish Jail do not [sic] have a grievance procedure." (R. Doc. 1, p. 4.) However, it is clear from Warden Topps' submission that a grievance procedure was in place before Magee was incarcerted, during his incarceration, and prior to the filing of his Complaint. Warden Topps has provided a copy of the document which put the policy into place. According to the document, which was signed by both Sheriff Crowe and Warden Topps, a written grievance procedure exists for the Washington Parish Jail Complex "that is available to all inmates that includes at least two (2) levels of appeal. This policy is a viable

complaint process that is available to allow systematic redress of conditions relating to confinement." (R. Doc. 65-4, p. 3.)

According to the evidence, the policy was signed by both Sheriff Crowe and Warden Topps on July 1, 2008. It is not disputed that Magee was incarcerated in the prison on November 13, 2008, after the grievance procedure was put into place. It is also uncontested that Magee did not file his Complaint until January 12, 2009, after the grievance was put into place. Because a grievance procedure existed, and Magee, by his own admission did not file a grievance, Magee failed to exhaust his administrative remedies prior to filing the above captioned action in contravention of the PRLA.

To the degree that Magee was unaware of the grievance procedure available to him, this is irrelevant to the instant matter. Ignorance of the grievance rules does not excuse a prisoner's noncompliance. *Accord*, *Aguirre v. Dyer*, 233 Fed. Appx. 365, 366 (5th Cir. May 24, 2007)(holding that an inmate failed to exhaust where he failed to file a step-two grievance because his step-one grievance was referred to the Internal Affairs Division) (citing *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999). Because it is readily apparent that Magee failed to exhaust his administrative remedies before filing his Complaint, Warden Topp's Motion for Summary Judgment is granted.

## V.     Costs

With respect to Warden Topp's requests for fees, Fed.R.Civ.P. 54(d)(1) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." Rule 54(d) creates a strong presumption that the prevailing party will be awarded costs. *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985). Because Magee, the losing party, is proceeding *pro se* and *in forma pauperis*, and presumably does

not have the means to pay costs, the court does not believe that the imposition of costs against him is warranted. Accordingly, the parties shall bear their own respective costs.

## VI.     Conclusion

Accordingly,

**IT IS ORDERED** that Warden Demille Topp's **Motion for Summary Judgment (R. Doc. 65)** is hereby **GRANTED** and Jimmy W. Magee's claim against the Defendant is **DISMISSED WITHOUT PREJUDICE** and each party to bear their own costs.

New Orleans, Louisiana, this 13th day of April, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**